McGREGOR W. SCOTT
United States Attorney
BRIAN A. FOGERTY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:20-CR-219 WBS |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| ASHLEY MARIE AURICH, | |
| Defendant. | |

## I.  INTRODUCTION

**A.   Scope of Agreement.**

The Information in this case charges the defendant with violation of 18 U.S.C. § 1519 – Falsification of Records in Federal Investigation. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.   Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

concerning the criminal activities of defendant, including activities which may not have been charged in the Information.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II.     DEFENDANT'S OBLIGATIONS

### A.     Guilty Plea.

The defendant will plead guilty to the sole count of the Information violation of 18 U.S.C. § 1519 – Falsification of Records in Federal Investigation.  The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw her plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

       1.     Waiver of Indictment:

The defendant acknowledges that under the United States Constitution she is entitled to be indicted by a grand jury on the charges to which she is pleading guilty and that pursuant to Fed. R. Crim. P. 7(b) she agrees to waive any and all rights she has to being prosecuted by way of indictment to the

charges set forth in the information. The defendant agrees that at a time set by the Court, she will sign a written waiver of prosecution by Indictment and consent to proceed by Information rather than by Indictment.

### B. Fine.

The defendant reserves the right to argue to Probation and at sentencing that she is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is her burden to affirmatively prove that she is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense.

### C. Special Assessment.

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if she fails to pay the assessment prior to that hearing.

### D. Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).

If the defendant, cooperating or not, violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new

charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### E. Asset Disclosure.

The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if she fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time, she will be

considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.D above.

### F. Agreement to Cooperate.

The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government. As used in this plea agreement, "cooperation" requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all documents, records, or other tangible evidence requested by the government; (4) not to participate in any criminal activity while cooperating with the government; and (5) to disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal activities or the illegal activities of any conspirators.

## III. THE GOVERNMENT'S OBLIGATIONS

### A. Dismissals/Other Charges.

The government agrees not to bring any other charges arising from the conduct outlined in the Factual Basis attached hereto as Exhibit A. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.D (Violation of Plea Agreement by Defendant/Withdrawal of Plea), III.B.3 (Reduction of Sentence for Cooperation), VI.B (Estimated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

### B. Recommendations.

1. Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range as determined by the Court.

///
///
///

PLEA AGREEMENT                           5

2.        Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

3.        Reduction of Sentence for Cooperation.

The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 50% of the applicable guideline sentence if she provides substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1. The defendant understands that she must comply with paragraph II.F and not violate this plea agreement as set forth in paragraph II.D herein. The defendant understands that it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance.

The defendant understands that the government may recommend a reduction in her sentence of less than 50% or no reduction at all; depending upon the level of assistance the government determines that the defendant has provided.

The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this plea agreement confers no right upon the defendant to require that the government make a § 5K1.1 motion, and that this plea agreement confers no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion. In particular, the defendant agrees not to try to file a motion to withdraw her guilty plea based on the fact that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within one year following sentencing, the government may move for a further reduction of her sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

PLEA AGREEMENT        6

**C.    Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### IV.    ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, Falsification of Records in Federal Investigation in violation of 18 U.S.C. § 1519:

First, the defendant knowingly altered, destroyed, concealed, or falsified a record, document or tangible object; and

Second, the defendant acted with the intent to impede, obstruct or influence an actual or contemplated investigation of a matter within the jurisdiction of any department or agency of the United States, to wit, the United States Department of Justice.

The defendant fully understands the nature and elements of the crimes charged in the Information to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

### V.    MAXIMUM SENTENCE

**A.    Maximum Penalty.**

The maximum sentence that the Court can impose is 20 years of incarceration, a fine of $250,000, a 5-year period of supervised release and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which she is pleading guilty. The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

///

**B.     Violations of Supervised Release.**

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 3 additional years imprisonment.

### VI.     SENTENCING DETERMINATION

**A.     Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.  The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.     Estimated Guideline Calculation.**

The government and the defendant agree that the following is their present best estimate of the sentencing guidelines variables.  These estimates shall not be binding on the Court, the Probation Office, or the parties:

    1.     Base Offense Level: The government and the defendant estimate that the base offense level is 13, pursuant to U.S.S.G. §§2J1.2(c), 2X3.1(a)(1), 2H1.1(a)(1), and 2A2.2(a).

        a.     The base offense level is the offense level from the offense guideline applicable to the underlying offense—to wit, aggravated assault.  The aggravated assault offense level includes a base offense level of 14, pursuant to §2A2.2(a), and a 5-level enhancement because the assault caused serious bodily injury to Victim 1 (i.e., at least a broken jaw and contusions), pursuant to §2A2.2(b)(3)(B).

        b.     The base offense level of 19, which is set forth in paragraph VI.B.1.a should be reduced by 6 levels, pursuant to §2X3.1(a)(1).  The resulting base offense level is 13, as set forth in paragraph VI.B.1.

PLEA AGREEMENT                                   8

2. Specific Offense Characteristic Adjustments:

   a. Defendant's offense level should be increased by 6 levels because the offense was committed under color of law, pursuant to U.S.S.G. §2H1.1(b)(1)(B).

3. Victim-Related Adjustment:

   a. Defendant's offense level should be increased by 2 levels because the victim was restrained in handcuffs during the underlying offense, pursuant to U.S.S.G. §3A1.3.

4. Acceptance of Responsibility:  See paragraph III.B.2 above

5. Criminal History:  The parties agree that the defendant's criminal history will be determined by the Court.

The defendant is free to recommend to the Court whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a).

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights.

The defendant understands that by pleading guilty she is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on her behalf; (f) to confront and cross-examine witnesses against her; and (g) not to be compelled to incriminate herself.

### B.   Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence.  The defendant agrees as part of her plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum for the offense to which she is pleading guilty.  The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty.  The defendant

specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate her plea, dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in Section II.D herein.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

### D. Impact of Plea on Defendant's Immigration Status.

Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offense to which the defendant is pleading guilty. The defendant and her counsel have discussed the fact that the charge to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 U.S.C. § 1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain that defendant will be removed. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant

understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel:

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: JAN. 14, 2021

_____
Johnny L. Griffin, III
Attorney for Defendant

### B. Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 1/14/2021

_____
ASHLEY MARIE AURICH
Defendant

PLEA AGREEMENT                                        11

C. **Attorney for the United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated:  January 13, 2021

McGREGOR W. SCOTT
United States Attorney

_____
BRIAN A. FOGERTY
Assistant United States Attorney

PLEA AGREEMENT                                                  12

EXHIBIT "A"

Factual Basis for Plea

On or about September 15, 2016, defendant ASHLEY MARIE AURICH knowingly falsified and made a false entry in a record or document, to wit, a California Department of Corrections and Rehabilitation ("CDCR") Crime/Incident Report, form CDCR 837-C (Rev. 10/15). By falsifying and making that false entry in the record, AURICH intended to impede, obstruct, or influence the investigation and proper administration of a matter, to wit, the investigation concerning Correctional Officer 1's unlawful use of force on then-65-year-old Victim 1, an inmate at California State Prison, Sacramento ("CSP-Sacramento"). This investigation was within the jurisdiction of the United States Department of Justice and the Federal Bureau of Investigation.

<u>AURICH observed Correctional Officer 1 assault Victim 1.</u>

On or about September 15, 2016, AURICH was a CDCR correctional officer and California peace officer assigned to work in Building A7 at CSP-Sacramento. That day, Correctional Officer 1, who was also a CDCR correctional officer and California peace officer, was working with AURICH as her correctional officer partner.

AURICH and Correctional Officer 1 went to Building A6 at CSP-Sacramento in order to escort Victim 1 back to Building A7. When AURICH and Correctional Officer 1 arrived at Building A6, AURICH observed a correctional officer handcuff Victim 1 with his hands behind his back. Thereafter, AURICH, Correctional Officer 1, and Correctional Officer 2 escorted Victim 1 from Building A6 to Building A7.

During the trip from Building A6 to Building A7, Correctional Officer 1 walked behind and to the left of Victim 1. Correctional Officer 1 used his right hand to hold Victim 1's left arm. AURICH participated in the escort by walking behind and to the right of Victim 1. Correctional Officer 2 followed closely behind AURICH, Correctional Officer 1, and Victim 1.

AURICH, Correctional Officer 1, Correctional Officer 2, and Victim 1 entered Building A7 through the building's rotunda area. When they were a few feet inside the rotunda, Victim 1 stopped walking and stiffened his torso. In response, Correctional Officer 1 released his grip on Victim 1's left arm, bent down and wrapped his arms around Victim 1's legs. While Victim 1 was still handcuffed with

his hands behind his back, Correctional Officer 1 lifted Victim 1's legs and pulled them backwards in the direction of Correctional Officer 1. This caused Victim 1 to fall forward violently. Correctional Officer 1's maneuver caused Victim 1 to strike his head and upper torso on the concrete floor of the Building A7 rotunda area.

The impact of Victim 1's head striking the concrete floor caused Victim 1 to suffer a broken jaw and broken teeth. The impact also caused bruising on Victim 1's head. After observing the incident, AURICH photographed a pool of Victim 1's blood and Victim 1's broken teeth fragments on the floor of Building A7.

Shortly after the assault, Victim 1 was taken to UC Davis Medical Center to receive treatment for his injuries. On or about September 17, 2016, Victim 1 died in the hospital.

AURICH and Correctional Officer 1 submitted false reports to obstruct the ensuing investigation.

Following the assault of Victim 1 on or about September 15, 2016, AURICH and Correctional Officer 1 discussed how to describe the foregoing incident in the from CDCR 837-C Crime/Incident Reports that they would have to write about the incident. Together, AURICH and Correctional Officer 1 knowingly prepared reports that falsely described the assault of Victim 1 and related events.

1. AURICH falsely omitted Correctional Officer 2 from her report.

In the form CDCR 837-C, there is a field in which the reporting correctional officer must disclose the witnesses to the event that is the subject of the report. In AURICH's CDCR 837-C concerning the assault on Victim 1, AURICH identified Correctional Officer 1, Correctional Officer 3, and Correctional Officer 4 as the only witnesses to the incident. However, in truth and in fact, AURICH knew that Correctional Officer 2 had accompanied her, Correctional Officer 1, and Victim 1 from Building A6 to the Building A7 rotunda. Further, AURICH knew that Correctional Officer 2 had seen Correctional Officer 1 take Victim 1 to the ground in the rotunda area. Nevertheless, after discussions with Correctional Officer 1, AURICH chose not to disclose that Correctional Officer 2 was present for the incident. AURICH failed to disclose Correctional Officer 2 in an attempt to prevent Correctional Officer 2 from submitting an accurate report regarding the assault on Victim 1. AURICH knew that an accurate report would incriminate AURICH's partner, Correctional Officer 1.

///

This was all designed to prevent investigators from learning the truth about Correctional Officer 1's assault on Victim 1.

### 2. AURICH falsely described Victim 1's conduct in the rotunda.

In the form CDCR 837-C that AURICH submitted on or about September 15, 2016, AURICH falsely described Victim 1's conduct in the rotunda area in order to make investigators believe that Correctional Officer 1 acted reasonably and lawfully. AURICH falsely stated "Upon arrival to the FA7 rotunda area [Victim 1] stopped moving forward, spun to his left and lunged forward, breaking [Correctional Officer 1's] escort hold." However, in truth and in fact, AURICH knew that Victim 1 never spun to his left, nor did Victim 1 lunge forward or break Correctional Officer 1's escort hold. AURICH wrote these false statements in order to provide a false justification for Correctional Officer 1's assault on Victim 1. AURICH's false statements were design to deceive investigators.

### 3. AURICH falsely described how Correctional Officer 1 took Victim 1 to the ground.

In the form CDCR 837-C that AURICH submitted on or about September 15, 2016, AURICH falsely described how Correctional Officer 1 took Victim 1 to the ground in the Building A7 rotunda area. AURICH falsely stated "[Correctional Officer 1] used immediate force to overcome resistance and effect custody of [Victim 1] by using [Victim 1's] forward momentum and [Correctional Officer 1's] body weight to force him to the ground." However, in truth and in fact, AURICH knew that Correctional Officer 1 did not need to sweep Victim 1's legs out from under him in order to respond to Victim 1's decision to stop walking. In addition, AURICH knew that Correctional Officer 1 never lost custody of Victim 1, and Correctional Officer 1's takedown did not involve "using [Victim 1's] forward momentum and [Correctional Officer 1's] body weight to force him to the ground." AURICH's false statements were designed to deceive investigators.

### 4. AURICH falsely described how Victim 1 landed on the ground.

In the form CDCR 837-C that AURICH submitted on or about September 15, 2016, AURICH falsely stated "I observed [Victim 1] land on his stomach face down." However, in truth and in fact, AURICH knew that she saw Victim 1 strike his head and upper torso on the concrete floor when Correctional Officer 1 took him to the ground. AURICH's false statements were designed to minimize

Correctional Officer 1's conduct by making Victim 1's fall sound less harmful. AURICH made these false statements to shield Correctional Officer 1 from scrutiny during an investigation and deceive investigators.

    I have read and carefully reviewed the Factual Basis for Pleas with my attorney. I agree that as it concerns my conduct it is true and correct. I also agree that if this matter proceeded to trial, the United States could establish each of the facts contained within the Factual Basis for Pleas beyond a reasonable doubt, and that those facts satisfy the elements of the offense to which I am pleading guilty.

Dated: 1/14/2021

_____
ASHLEY MARIE AURICH
Defendant